UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM DECLUE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:03CV1371 HEA |
| ) | |
| MAYTAG CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |
| ) | |
| MAYTAG CORPORATION, ) | |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GOEDEKER'S SUPERSTORE, et al., ) | |
| ) | |
| Third Party Defendants. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on third party plaintiff Maytag's Motion In Limine, [Doc. # 53]. Third party defendant[1] Goedeker's has filed an opposition to the motion. On August, 2005, the Court gave Goedeker's five days within which to lay a foundation for the proposed testimony of two retained experts, Mr. Robert

---

[1] The parties herein have routinely treated the third party defendants as one defendant. Consistent therewith, the Court will refer to the third party defendants as a single entity known as Goedeker's.

Helmkamp and Mr. John Reagan. Goedeker's has, in response to that Order, filed a supplement to its opposition to the Motion in Limine. For the reasons set forth below, the motion is granted.

**Facts and Background**

Plaintiffs William and Patty DeClue filed this action against Maytag alleging that an electric clothes dryer manufactured by Maytag was defective and that this defective dryer caused a fire which occurred in their home on August 22, 2001. Plaintiffs alleged that the dryer was purchased at Goedeker's Super Store and that Goedeker's delivered and installed the dryer.

Maytag brought this third party action against Goedeker's alleging that the dryer was negligently installed and that this alleged negligent installation caused the fire. Goedeker's admits that it sold and delivered the dryer to the DeClue's, but denies that it installed the dryer and that negligent installation caused the fire.

In the original suit, plaintiffs had retained two expert witnesses: Helmkamp, a cause and origin investigator, and Reagan, an electrical engineer. Goedeker's did not identify any retained experts of its own. Goedeker's has indicated in its pretrial filings that it intends to call Helmkamp as a witness and to potentially call Reagan as a witness. Maytag seeks an Order from this Court excluding and/or limiting the testimony of Helmkamp and Reagan for failure to satisfy the requirements of Rule

702 of the Federal Rules of Evidence.

## Standard for Admission of Expert Testimony

Rule 702 of the Federal Rules of Evidence provides the basis upon which expert testimony is admissible. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 places appropriate limits on the admissibility of purported scientific evidence by assigning the district court the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993); see also, *Eckelkamp v. Beste*, 315 F.3d 863, 868 (8th Cir. 2002). The reliability standard is established by Rule 702's requirement that an expert's testimony be grounded in science's methods and procedures, while the relevance standard is established by the Rule's requirement that the testimony assist the trier of fact to understand the evidence or to determine a fact in issue. *Daubert*, 509 U.S. at 590-91. There must be a valid scientific connection to the pertinent inquiry as a precondition to admissibility. *Id.*

at 591.

In *Daubert*, the Supreme Court emphasized the role of trial judges as gatekeepers to "ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

> First, the trial court must make a "preliminary assessment of whether the reasoning is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id* at 592-93, 113 S.Ct. 2786. The Court cautioned that the trial court must focus "on [the] principles and methodology, not on the conclusions that they generate." *Id* at 591, 113 S.Ct. 2786. Second, the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. *Id*, at 592, 113 S.Ct. 2786. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Id*. at 591, 113 S.Ct. 2786. The Court, in *Kumho Tire Co. v. Carmichael*, 562 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), clarified that the district court's gatekeeper function applies to all expert testimony, not just testimony based in science. *Id*. at 147, 119 S.Ct. 1167.

*Kudabeck v. Kroger*, 338 F.3d 856, 860 (8th Cir. 2003). The Court ordinarily considers whether the underlying theory or technique can be or has been tested; whether the theory or technique has been subject to peer review; whether the technique has a known or knowable rate of error; and whether the theory or technique is generally accepted in the relevant community. *Jaurequi* 173 F.3d 1076, 1082 (8th Cir. 1999); *Lauzon v. Senco Products, Inc.,* 270 F.3d 681, 687 (8th Cir.2001) (citations omitted).

Despite the numerous factors available to courts for determination of the admissibility of expert testimony, "the polestar, however, must always be scientific validity--and thus the evidentiary relevance and reliability--of the principles that underlie a proposed submission." *Jaurequi,* 173 F.3d at 1082. Finally, the "proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon,* 270 F.3d at 686.

## Discussion

**Proposed testimony of Robert Helmkamp**

Goedeker's proposes to offer the testimony of Helmkamp and Reagan in rebuttal. This proposition, however, does not relieve Goedeker's of its duty to prove the admissibility of the testimony by a preponderance of the evidence.

In support of Helmkamp's testimony, Goedeker's argues that Helmkamp is a certified fire investigator and that Helmkamp consulted with Reagan, an electrical engineer, who provided possible causes in helping to eliminate the back of the dryer as the origin of the fire. Also, Goedeker's asserts that Helmkamp's opinions "were based on the same methods employed by Mr. Burns," Maytag's own cause and origin expert. Originally, Helmkamp's opinion stated that it was his opinion that the fire was accidental in nature, and originated in or behind the dryer. Further, he opined that in order to more accurately determine the exact nature of the fire,

inspection by an electrical engineer was appropriate, possibly involving destructive testing. At his deposition, after consulting with Reagan, Helmkamp opines that the fire initiated inside the dryer. He performed no tests and he admits that he had not done any work on this case from his initial report until his deposition. The Court finds the deposition testimony to be unreliable; no testing supporting Helmkamp's subsequent conclusion is offered, nor does Helmkamp set forth a foundation upon which he bases his opinion other than what he was told by Reagan, another retained expert. Helmkamp fails to cite or refer to any ascertainable authority. His conclusion is not the result of any independent testing he performed.

To the extent that Helmkamp's testimony is based on his own independent fire investigation as a certified fire investigator, he may testify. Whether the testimony as such is credible falls within the province of the jury. Any proposed testimony based on what Helmkamp was told by another expert fails to satisfy the requirement of Rule 702 and *Daubert* and as such, the testimony will is excluded.

**Proposed testimony of John Reagan**

Goedeker's states that it is only offering Reagan's expert opinion to demonstrate that there were several possible electrical cause to the fire. It argues no scientific testing needed to be performed by Reagan to prove that lint catches fire or that other plastic components in the dryer may have caught fire after the electrical

arcing began.  Maytag observes that the point of its motion as it relates to Reagan is that he not be allowed to testify that the *initial* fuel source for the subject fire was insulation on the wiring inside the control panel of the dryer.  Goedeker's has offered nothing to demonstrate that any testimony by Reagan regarding the initial fuel source for the fire was based on any methods or techniques as anticipated by Rule 702 and *Daubert*.  As such, any proposed testimony regarding the initial fuel source is unreliable and therefore inadmissible.

## Conclusion

Based upon the foregoing, Maytag's Motion in Limine to prevent and/or limit the testimony of Robert Helmkamp and John Reagan is granted to the extent that Helmkamp may not testify as to any opinions formulated subsequent to his report.  Reagan shall be prohibited from testifying as to his opinion regarding the initial source of the fire.

Accordingly,

**IT IS HEREBY ORDERED** that Maytag's Motion In Limine, [#53] is granted.

Dated this 29th day of August, 2005.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE